## PEOPLES RAILWAY CO v BROWN

Ohio Appeals, 2nd Dist, Montgomery Co

No 1286.   Decided Feb 8, 1935

McMahon, Corwin, Landis & Markham, Dayton, for plaintiff in error.

Froug & Froug, Dayton, for defendant in error.

**OPINION**

By BARNES, J.

The plaintiff and her son testify to the sudden, violent and unusual jerk of the car and also as to the ice in the aisle. The testimony of the plaintiff tended to substantiate her contention that her fall was due to the negligent operation of the car and the ice in the aisle. Her son was at the front and did not see the plaintiff fall, but corroborates her testimony as to the movement of the car and the ice in the aisle. The defendant presented the testimony of two passengers and in addition the motorman. All testified that there was no unusual or violent jerk of the car nor was there any ice in the aisle.

The two lady passengers presented as witnesses as was disclosed from the testimony were wholly disinterested.

The state of the record requires a determination as to whether or not plaintiff sustained the burden of establishing the claimed acts or conditions of negligence.

We will refer to this phase of the case later. The accident happened on December 14, 1932, about 9:30 A. M. The trial of the cause started on February 7, 1934. Plaintiff claims that she suffered a fractured vertebrae, ruptured kidney and continuously suffered excruciating pain; that before the accident she had been in good health and performing all the duties of a housewife; that since the accident she is not able to do much work; that she now does none of the family washing or hanging up of the clothes in the back yard as she had done previously; that she can not raise her hands above her head without excruciating pain. During the trial and on cross-examination she was requested to show to the jury how high she could raise her hands. She lifted them to the level of her head and then cried claiming pain. She said this condition had been continuous and at no time since the accident was she able to raise her hands higher. On these facts plaintiff was supported by the testimony of her husband and son, and in a qualified way by some of her neighbors. Plaintiff for some time prior to the trial had been wearing a brace as a support for her back. This appliance was first suggested by Dr. Herman, the regular examining physician of the Railway Company. The suggestion on recommendation was made to Dr. Smith, the regular attending physician of the plaintiff. Dr. W. H. Delscamp took X-Rays of the spine and found no evidence of fracture or other injury. Dr. Herman, who examined the plaintiff for the Railway Company shortly after the accident gave subjective symptoms, but was unable to find anything objective. Dr. Smith gave testimony of some objective symptoms, but as to the extent of pain and suffering he, too, relied on the subjective.

After the filing of the petition the Railway Company through its investigators and attorneys, rented a vacant house, the rear of which gave rather a full view of the rear of plaintiff's residence and their back yard. During their two or three weeks occupancy of this house, four witnesses testified as to the movements and doings of Mrs. Brown, on her back porch and back yard. Some 25 or more still pictures were taken, claimed to be the pictures of Mrs. Brown, and on one or two days moving pictures were

taken. Each of these four witnesses testified that they knew Mrs. Brown personally and on different occasions had talked with her; that they saw her bring the family wash out of the house down the back steps and hang the clothes on the line in the back yard; that in so doing she would throw the wash over the line and then lift her hands high above her head in straightening it and fastening it. That they also saw her working with the parrot cage on the back porch, lifting her hands and arms to their full length above her head in hanging the cage or removing it from the hook. Corroborative of this testimony are the still and motion pictures above referred to. After the presentation and introduction of these pictures Mrs. Brown was not called in rebuttal to deny or explain.

While she was on the stand giving evidence in chief, counsel for Railroad Company in cross-examination interrogated her as to certain still pictures, but in the first instance she was unable to see them distinctly because she did not have her glasses with her. On her return to the witness stand after a recess she did have her glasses and after much quibbling said that she did not think the pictures were of herself or of her back yard. Neither her husband nor her son were called in rebuttal. The only evidence in rebuttal were three neighbor women who testified that at different times they would hang their wash in the back yard of the Browns. The pictures were not presented to either of the three, and while it was apparent that counsel for plaintiff was desiring to raise the inference that witnesses for Railway Company did not see Mrs. Brown doing the things they say they did but some one or more of these neighbors. If this is the theory we do not understand why these neighbors were not interrogated as to the pictures. While it was true that none of the pictures present the features of the woman in this back yard, yet it is a matter of common experience that each of these neighbors would be able to say whether or not they were the subject in any of the pictures. The fact that neighbors were in the habit of hanging their clothes in the Brown yard does not meet the issue that Mrs. Brown was seen doing the same thing.

It is our conclusion that this and other evidence very completely discredited the claims of Mrs. Brown as to the extent and effect of her claimed injury.

This being true, it necessarily reflects upon the credit that is to be given to the testimony of Mrs. Brown on the question of negligence of the Railroad Company in

the operation of its car. The same observation may be made relative to the testimony of the son. Considering that the evidence disclosed that plaintiff improperly enlarged upon the nature and extent of her injuries, it follows that her testimony as to the cause of the fall must be received with great caution. The fact that two lady passengers, wholly disinterested so far as disclosed from the record, testified contra any negligence, presents a situation where we must say that the verdict of the jury is against the manifest weight of the evidence.

Judgment of the court below will be reversed.

Exceptions will be allowed.

Entry may be drawn accordingly.

HORNBECK, PJ, and KUNKLE, J, concur in judgment.